IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD DARRELL BALLARD, | : | Case No. 3:10-cv-01456 |
| | : | |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| COI WILLIAMS, *et al.*, | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## MEMORANDUM
January 14, 2015

Before the Court are a number of the Plaintiff's filings, including a Motion to Recuse (ECF No. 229), a Motion for Sanctions (ECF No. 209), and a Motion for Reconsideration of the Plaintiff's Prior Motions for Appointment of Counsel (ECF No. 235), among others.  For the following reasons, the listed motions are denied.

## I.    BACKGROUND

Plaintiff Todd Darrell Ballard, a state inmate proceeding *pro se*, commenced this action on June 28, 2010, asserting that prison staff and officials violated his constitutional rights following an altercation between Ballard and his cellmate on March 30, 2008.  In his second amended complaint, Ballard claimed that corrections officers at SCI-Camp Hill entered his cell following the altercation and assaulted him, burning him on a radiator during the scuffle.  Plaintiff also alleges

1

that he was slammed against the wall multiple times, and that he suffered burns when his head was pressed against the radiator while he was forced to the floor and handcuffed.  He also alleges that some defendants failed to intervene.

Ballard made further allegations against several correctional defendants for theft of his personal property, and argued that the supervisory defendants, Defendants Zobitne and Palakovish, failed to adequately investigate his complaints after he filed a grievance regarding the March 30, 2008 incident.  Finally, Ballard also sued several of the prison's physicians assistants and nurses alleging that they rendered inadequate medical treatment to him for injuries that he sustained as a result of the alleged assault.

After several years of litigation, the correctional defendants moved for partial summary judgment on some of Ballard's claims.  On July 25, 2014, Chief Magistrate Judge Martin C. Carlson issued a report and recommendation stating that the Defendants' motion should be granted in part.  After extending the Plaintiff's deadline for filing objections to the report until September 30, 2014, the Court adopted the report and recommendation.  In the wake of the Court's adoption, the Plaintiff filed a number of motions that are the subject of this Memorandum.

## II.    DISCUSSION

Plaintiff filed a variety of motions currently pending before the Court, including a Motion to Recuse (ECF No. 229), a Motion for Sanctions (ECF No. 209), and a Motion for Reconsideration of the Plaintiff's Prior Motions for Appointment of Counsel (ECF No. 235), and a Motion for a Pretrial Conference (ECF No. 234), among others.  The Court begins its considerations with the Plaintiff's Motion to Recuse.

## A.   <u>Motion to Recuse Denied</u>

The Plaintiff filed a motion seeking the undersigned's recusal in this case pursuant to 28 U.S.C. § 144 alleging bias or prejudice of the judge.[1]  The principal basis for the motion is the Court's adoption of a magistrate judge's report and recommendation after the period for objections had run, but before the Plaintiff's

---

[1] The statute reads:

> Whenever a party to any porceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term
> at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

timely filed objections had arrived at the Court for its consideration. To be clear, the Court merely entered an Order after the period for objections had run, not anticipating the Plaintiff's later filing that is deemed timely pursuant to the prison mailbox rule. These facts do not require or even anticipate recusal.

The rules of law governing the recusal of a trial judge for personal bias pursuant to 28 U.S.C. § 144 are well settled. The mere filing of an affidavit of bias in accordance with the statute does not require a federal trial judge to disqualify himself in that case. United States v. Dansker, 537 F.2d 40, 53 (3d Cir. 1976). "[A] trial judge need only recuse himself if he determines that the facts alleged in the affidavit, taken as true, are such that they would convince a reasonable man that he harbored a personal, as opposed to a judicial, bias against the movant." Id. "[A] trial judge is equally obligated *not* to recuse himself when the facts do not give fair support to a charge of prejudgment, as he is to excuse himself when the facts warrant such action." United States v. Diorio, 451 F.2d 21, 24 (2d Cir. 1971); accord Simmons v. United States, 302 F.2d 71, 75 (3d Cir. 1962).

In a hoary case that has withstood the test of time, the Supreme Court of the United States articulated the principles behind recusal of this nature:

> The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not

4

applicable save in those rare instances in which the affiant is able to
state facts which tend to show not merely adverse rulings already
made, which may be right or wrong, but facts and reasons which tend
to show personal bias or prejudice.  It was never intended to enable a
discontented litigant to oust a judge because of adverse rulings made,
for such rulings are reviewable otherwise, but to prevent his future
action in the pending case.

Ex Parte Am. Steel Barrel Co., 230 U.S. 35, 43–44 (1913).

In the instant case, the Plaintiff presents no facts in the affidavit that would
convince a reasonable man that the undersigned harbored a personal bias against
the movant.  The principal source of the Plaintiff's complaint is the Court
characterizing the Plaintiff's objections to a report and recommendation as
untimely.  The Plaintiff's objections were, as it turned out, actually timely and this
was a harmless error.

Objections to the report and recommendation of July 25, 2014 were due on
September 30, 2014, after the Court granted Plaintiff's motion for an extension of
time to file the objections.  After reviewing the report and recommendation, the
Court issued its Order adopting it on October 1, 2014, agreeing with the
recommendations, and noting that there were no objections then filed.  Plaintiff's
objections arrived the following day, October 2, 2014 and were duly docketed.

While this filing is late for an ordinary litigant, this plaintiff's status as a
prisoner permits him the leniency of the prison mailbox rule.  See Houston v. Lack,

5

487 U.S. 266, 276 (1998). "Under that rule, the date of filing occurs when a prisoner transmits documents to prison authorities for mailing." Spencer v. Beard, 351 Fed. App'x 589, 590 (3d Cir. 2009).  In this case, Plaintiff signed his objections on September 28, 2014 and transmitted them to prison staff for mailing before the September 30 filing deadline.  Thus, Plaintiff's objections to the report and recommendation were timely and deserving of *de novo* review.

The error was harmless, however, because in deciding the currently pending motions, the Court conducted the warranted *de novo* review of the Plaintiff's objections.  See Bausch & Lomb Inc. v. Moria S.A., 222 F. Supp. 2d 616 (E.D. Pa. 2002) ("A federal district court has the inherent power to reconsider interlocutory orders when it is consonant with justice to do so." (internal quotations and citation omitted)).  Upon *de novo* review, the Plaintiff's objections are unpersuasive and the Court remains in agreement with the cogent reasoning and recommendation of the magistrate judge.  Accordingly, the Court's error in characterizing the Plaintiff's filing as untimely was harmless, and the Court reaches the same result after consideration of the Plaintiff's objections.

A harmless error that the judge recognizes, acknowledges, and remedies, does not rise to the level of personal bias or prejudice meriting disqualification under § 144.  The appellate process exists in part to allow review of the accuracy

of the trial judge's determinations.  That is the appropriate avenue for the

Plaintiff's desired relief in the matter before the Court.[2]

### B.   <u>Motion for Sanctions Denied</u>

Plaintiff also filed a Motion for Sanctions based on the spoliation of

evidence.  He alleges that the Defendants inappropriately destroyed videotape

footage of the incident giving rise to this case.

Spoliation is defined as the destruction or significant alteration of evidence,

or the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation.  <u>Mosiad Techs. Inc. v. Samsung Electronics Co.,</u>

<u>Ltd.</u>, 348 F. Supp. 2d 332, 335 (D.N.J. 2004).  Inadvertent destruction of material

that becomes evidence in litigation does not amount to spoliation; the destruction

must be intentional to warrant the imposition of sanctions.  <u>See, e.g.</u>, <u>Brewer v.</u>

<u>Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 334 (3d Cir. 1995).  "No unfavorable

inference arises when the circumstances indicate that the document or article in

question has been lost or accidentally destroyed or where the failure to produce it is

otherwise properly accounted for."  <u>Id.</u>  Courts do not draw the inference that

evidence was intentionally damaged or destroyed where its destruction could have

---

[2] Plaintiff also filed a Motion for an Order to Compel the District Court Judge to Cease and Desist Pending the Adjudication of Plaintiff's of Plaintiff's Motion and Memorandum to Recuse, urging the Court to address the Plaintiff's pending Motion to Recuse.  That Motion is dismissed as moot in light of the present Memorandum and corresponding Order.

been unrelated to the litigation.  See id.; see also In re Hechinger Investment Co. of Del., Inc., 489 F.3d 568, 579 (3d Cir. 2007).

In the case before the Court, there is no indication that the videotape was intentionally damaged or destroyed.  The Defendants maintain that, while there are overhead video cameras in the hallway in question, video from that system is not routinely preserved.  If that video is not specifically pulled from the system and preserved, then it is specifically overwritten or recycled in the normal course of operations. Def.'s Br. Opp'n 5–6, June 30, 2014, ECF No. 210.  In this case, the specific video was not preserved and there is no evidence that any of the Defendants either intentionally lost or destroyed the video evidence in question.

To determine whether a spoliation sanction is appropriate, courts in the Third Circuit consider: (1) the spoliator's degree of fault; (2) the resulting prejudice to the opposing party; and, (3) the availability of a lesser sanction that will both avoid substantial unfairness and, if necessary, serve to deter future spoliation.  In re Hechinger Investment Co., 489 F.3d at 579; Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994).

In this case, the Defendants are not personally at fault for the spoliation, and there is no indication that they harbored any motive to intentionally destroy the evidence under the prospect of litigation.  See id.  The specific Corrections

8

Defendants in this case were not personally responsible for the operation and

maintenance of the videotape system.  The Defendant contends that members of

the prison's security officer were responsible for the video and they are not

defendants in this case.  See Baliotis v. McNeil, 870 F. Supp. 1285, 1290 (M.D. Pa.

1994) (declining to impose sanctions against a blameless party for the actions of a

third party).

Concerning prejudice, a similar scenario to the facts of this case occurred in

Larison v. City of Trenton, 180 F.R.D. 261, 269–70 (D.N.J. 1998).  In Larison, the

court denied the plaintiff's claim for spoliation of videotape evidence where the

police routinely recycled videotape from their detention unit after several days

unless it recorded a significant incident.  The Larison Court found there was no

evidence that the police officers intentionally acted to impede the plaintiff's legal

claim.  That court cogently stated:

> Plaintiff has asserted that the fact that defendant destroyed the
> videotapes and documentation creates an inference that such
> videotapes and documentation would incriminate defendants and thus
> mandates a finding that defendants intentionally destroyed the
> videotapes and documentation.  Additionally, plaintiff contends that
> he could not have learned of this evidence without defendants'
> disclosure.  The court notes there is a distinction between plaintiff not
> having access to the fact that videotapes existed, and the plaintiff not
> having access to the underlying facts contained on the videotapes.
> Although plaintiff may not have been aware that tapes were being
> generated, plaintiff, who was a participant in the events, obviously has
> first-hand knowledge of what the tapes would reveal.  Thus, this is not

> a case of a party being deprived of the evidence necessary to prove his
> claims, but rather is a question of whether additional or better
> evidence may be available.

Larison, 180 F.R.D. at 268–69.

The case before this Court supplies similar facts.  Concerning prejudice, as in Larison, "this is not a case of a party being deprived of the evidence necessary to prove his claims, but rather is a question of whether additional or better evidence may be available."  Id. In this case, the Plaintiff has not been materially prejudiced by the missing videotape because he can still present testimony evidence to establish the events of the videotape.

There is no indication that the Defendants were involved in sanctionable conduct, that the Plaintiff is materially prejudiced by the missing video, or that further spoliation may occur such that a sanction is warranted to prevent it.  See In re Hechinger Investment Co., 489 F.3d at 579 Accordingly, the Plaintiff's Motion for Sanctions is denied.

The Plaintiff also filed a Motion for the Recusal of the Attorney General.  Based on the information in the filing and the relief sought, the Court construes this as a motion for sanctions.  The thrust of the filing's requested relief asks the

Court to bar the Defendants from being represented by their attorneys.[3]  Because

the Plaintiff has not presented grounds warranting sanctions, this motion is also

denied.

## C.    Motion for Reconsideration of Motion to Appoint Counsel Denied

By Memorandum and Order dated September 18, 2013, Chief Magistrate

Judge Carlson denied the Plaintiff's Motion to Appoint Counsel.  The Plaintiff now

files a motion for the reconsideration of that denial in this court.

"A district court reviews the nondispositive order of a magistrate judge for

legal error or clearly erroneous findings of fact."  Camplbell v. Int'l Bus. Mach.,

912 F. Supp. 116, 119 (D.N.J. 1996).  In his report and recommendation, Chief

Magistrate Judge Carlson correctly stated the applicable law and applied it to the

facts that do not appear clearly erroneous.[4]  See Report Recommendation 8–13,

---

[3] The Plaintiff also includes baseless allegations of conflict of interest and unlawful acts in this filing.

[4] There is neither a constitutional nor statutory right to counsel for civil litigants.  See, e.g., Parham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997).  Instead, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." 28 U.S.C. § 1915(e)(1).  The Court's appointment of counsel under this statue is discretionary.  Tabron v. Grace, 6 F.3d 147, 157–58 (3d Cir. 1993).  The United States Court of Appeals for the Third Circuit articulated the standards courts in this circuit should consider when reviewing applications to appoint counsel under this statute:

> [Determine] that the plaintiff's claim has some merit, then [we] should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issue; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the

July 24, 2014, ECF No. 215.  Moreover, the Court concurs with the magistrate

judge's analysis and sees little reason to alter his conclusion at this juncture.

Accordingly, the Plaintiff's motion is denied.

### D.   **Motion for Pretrial Conference**

The Plaintiff also filed a Motion for Pretrial Conference to Resolve Matters

for Consideration and Disposition.  The Plaintiff requests a conference to address

several issues that are addressed in this Memorandum and corresponding Order,

and other matters typically addressed at the routine pretrial conference for  civil

matters.  To the extent issues remain unaddressed by this Memorandum, the

Plaintiff's motion is granted, and a pretrial conference shall be scheduled in

accordance with the calendar when this matter is set for trial.

### III.   **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion to Recuse, Motion for

Sanctions, and Motion for Reconsideration are denied.  The Plaintiff's Motion for

a Pretrial Conference is granted.

An appropriate Order follows.

---

case will require the testimony of expert witnesses; [and] (6) whether the plaintiff
can attain and afford counsel on his own behalf.

Parham, 126 F.3d at 457.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge